

September 8, 2023

**VIA APPELLATE CM/ECF SYSTEM**

Ms. Molly C. Dwyer
Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA  94111-3939

Re:   **FRAP 28(j) – Appellant's Citation of Supplemental Authorities**
        *Prutehi Litekyan: Save Ritidian v. United States Department of the*
        *Air Force, et al.*, **Ninth Circuit No. 22-16613**
        <u>**Oral Argument Scheduled October 6, 2023**</u>

Dear Ms. Dwyer:

Appellant Prutehi Litekyan draws the Court's attention to Congress's recent
amendments to the National Environmental Policy Act ("NEPA"). *See* Fiscal
Responsibility Act of 2023 ("FRA"), Pub. L. No. 118-5, § 321, 137 Stat. 10, 38-46
(attached). These amendments support Appellant's argument that the "functional
equivalence" doctrine does not exempt Defendants from NEPA. *See* Opening Br.
at 51-59; Reply Br. at 20-31. "Subsequent legislation declaring the intent of an
earlier statute is entitled to great weight in statutory construction." *Red Lion
Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 380-81 (1969).

Congress amended NEPA section 102(2)(C), 42 U.S.C. § 4332(2)(C), to clarify
that agencies can avoid the broad mandate to prepare NEPA analyses of "every"
proposal for "major Federal action[]" "where compliance would be ***inconsistent
with other statutory requirements***." Pub. L. No. 118-5, § 321(a)(3)(A), 137 Stat. at
38 (emphasis added). New section 106 explains that narrow exemption, limiting
the circumstances where another statute relieves agencies of their duty to "prepare
an environmental document" under NEPA to ***only*** where (1) "the proposed agency
action is excluded pursuant to … another provision of law" or (2) "the preparation
of such document would clearly and fundamentally conflict with the requirements

Hon. Molly C. Dwyer, Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
September 8, 2023
Page 2

of another provision of law." *Id.* § 321(b), 137 Stat. at 39 (codified at 42 U.S.C. § 4336(a)(2), (3)).

The FRA adopted "elements of the BUILDER Act." 169 Cong. Rec. S1,877 (daily ed. June 1, 2023) (statement of Senator Capito); *see* Pub. L. No. 118-5, § 321, 137 Stat. at 38. Congress declined, however, to endorse the functional equivalence exemption, which the BUILDER Act, as originally proposed, would have codified. *See* H.R. 1577, 118th Cong. § 2(b) (2023) (proposed section 106(a)(6)) (attached).

Congress's recent codification of express, narrow exemptions from NEPA's mandate that federal agencies like Defendants prepare NEPA documents for proposed actions counsels strongly against courts creating an implied "functional equivalence" exemption, which Congress considered and declined to adopt. *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, … [t]he proper inference ... is that Congress … limited the statute to the ones set forth").

Respectfully submitted,

/s/ David L. Henkin
David L. Henkin
Thien T. Chau

Attorneys for Plaintiff-Appellant
Prutehi Litekyan: Save Ritidian

DLH/tt
Attachments

cc:    counsel of record (via Appellate CM/ECF System)

Fiscal Responsibility Act of 2023,

Pub. L. No. 118-5, § 321, 137 Stat. 10, 38-46

137 STAT. 10 PUBLIC LAW 118–5—JUN. 3, 2023

## Public Law 118–5
## 118th Congress

### An Act

June 3, 2023

[H.R. 3746]

To provide for a responsible increase to the debt ceiling.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Fiscal
Responsibility
Act of 2023.
2 USC 900 note.

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Fiscal Responsibility Act of 2023".

**SEC. 2. TABLE OF CONTENTS.**

The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. References.

DIVISION A—LIMIT FEDERAL SPENDING

TITLE I—DISCRETIONARY SPENDING LIMITS FOR DISCRETIONARY CATEGORY

Sec. 101. Discretionary spending limits.
Sec. 102. Special adjustments for fiscal years 2024 and 2025.
Sec. 103. Budgetary treatment of previously enacted emergency requirements.

TITLE II—BUDGET ENFORCEMENT IN THE HOUSE OF REPRESENTATIVES

Sec. 111. Authority for Fiscal Year 2024 Budget Resolution in the House of Representatives.
Sec. 112. Limitation on Advance Appropriations in the House of Representatives.
Sec. 113. Exercise of rulemaking powers.

TITLE III—BUDGET ENFORCEMENT IN THE SENATE

Sec. 121. Authority for fiscal year 2024 budget resolution in the Senate.
Sec. 122. Authority for fiscal year 2025 budget resolution in the Senate.
Sec. 123. Limitation on advance appropriations in the Senate.
Sec. 124. Exercise of rulemaking powers.

DIVISION B—SAVE TAXPAYER DOLLARS

TITLE I—RESCISSION OF UNOBLIGATED FUNDS

Sec. 1. Rescission of unobligated funds.
Sec. 2. Rescission of unobligated funds.
Sec. 3. Rescission of unobligated funds.
Sec. 4. Rescission of unobligated funds.
Sec. 5. Rescission of unobligated funds.
Sec. 6. Rescission of unobligated funds.
Sec. 7. Rescission of unobligated funds.
Sec. 8. Rescission of unobligated funds.
Sec. 9. Rescission of unobligated funds.
Sec. 10. Rescission of unobligated funds.
Sec. 11. Rescission of unobligated funds.
Sec. 12. Rescission of unobligated funds.
Sec. 13. Rescission of unobligated funds.
Sec. 14. Rescission of unobligated funds.
Sec. 15. Rescission of unobligated funds.

137 STAT. 38          PUBLIC LAW 118–5—JUN. 3, 2023

**SEC. 313. SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM UNDER THE FOOD AND NUTRITION ACT OF 2008.**

Section 2 of the Food and Nutrition Act of 2008 (7 U.S.C. 2011) is amended by adding at end the following:
"That program includes as a purpose to assist low-income adults in obtaining employment and increasing their earnings. Such employment and earnings, along with program benefits, will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.".

Deadline.
Public
information.
Data.
7 USC 2015 note.

**SEC. 314. WAIVER TRANSPARENCY.**

Not later than 30 days after the date of enactment of this Act, the Secretary of Agriculture shall make public all available State waiver requests, including all supporting data from the State, and agency approvals of such requests, including relevant documentation on the utilization of waivers authorized under Section 6(o)(4)(A) of the Food and Nutrition Act of 2008 (7 U.S.C. 2015(o)(4)(A)).

# TITLE III—PERMITTING REFORM

**SEC. 321. BUILDER ACT.**

(a) PARAGRAPH (2) OF SECTION 102.—Section 102(2) of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)) is amended—

(1) in subparagraph (A), by striking "insure" and inserting "ensure";

(2) in subparagraph (B), by striking "insure" and inserting "ensure";

(3) in subparagraph (C)—

(A) by inserting "consistent with the provisions of this Act and except where compliance would be inconsistent with other statutory requirements," before "include in every";

(B) by striking clauses (i) through (v) and inserting the following:

"(i) reasonably foreseeable environmental effects of the proposed agency action;

"(ii) any reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented;

Analysis.

"(iii) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal;

"(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and

"(v) any irreversible and irretrievable commitments of Federal resources which would be involved in the proposed agency action should it be implemented."; and

(C) by striking "the responsible Federal official" and inserting "the head of the lead agency";

(4) in subparagraph (D), by striking "Any" and inserting "any";

(5) by redesignating subparagraphs (D) through (I) as subparagraphs (G) through (L), respectively;

(6) by inserting after subparagraph (C) the following:

"(D) ensure the professional integrity, including scientific integrity, of the discussion and analysis in an environmental document;

"(E) make use of reliable data and resources in carrying out this Act;

"(F) consistent with the provisions of this Act, study, develop, and describe technically and economically feasible alternatives;"; and

(7) in subparagraph (I), as amended, by inserting "consistent with the provisions of this Act," before "recognize".

(b) NEW SECTIONS.—Title I of the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) is amended by adding at the end the following:

**"SEC. 106. PROCEDURE FOR DETERMINATION OF LEVEL OF REVIEW.**   42 USC 4336.

"(a) THRESHOLD DETERMINATIONS.—An agency is not required to prepare an environmental document with respect to a proposed agency action if—

"(1) the proposed agency action is not a final agency action within the meaning of such term in chapter 5 of title 5, United States Code;

"(2) the proposed agency action is excluded pursuant to one of the agency's categorical exclusions, another agency's categorical exclusions consistent with section 109 of this Act, or another provision of law;

"(3) the preparation of such document would clearly and fundamentally conflict with the requirements of another provision of law; or

"(4) the proposed agency action is a nondiscretionary action with respect to which such agency does not have authority to take environmental factors into consideration in determining whether to take the proposed action.

"(b) LEVELS OF REVIEW.—

"(1) ENVIRONMENTAL IMPACT STATEMENT.—An agency shall issue an environmental impact statement with respect to a proposed agency action requiring an environmental document that has a reasonably foreseeable significant effect on the quality of the human environment.

"(2) ENVIRONMENTAL ASSESSMENT.—An agency shall prepare an environmental assessment with respect to a proposed agency action that does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown, unless the agency finds that the proposed agency action is excluded pursuant to one of the agency's categorical exclusions, another agency's categorical exclusions consistent with section 109 of this Act, or another provision of law. Such environmental assessment shall be a concise public document prepared by a Federal agency to set forth the basis of such agency's finding

　　　　PUBLIC LAW 118–5—JUN. 3, 2023

of no significant impact or determination that an environmental impact statement is necessary.

"(3) SOURCES OF INFORMATION.—In making a determination under this subsection, an agency—

"(A) may make use of any reliable data source; and

"(B) is not required to undertake new scientific or technical research unless the new scientific or technical research is essential to a reasoned choice among alternatives, and the overall costs and time frame of obtaining it are not unreasonable.

42 USC 4336a.　　"SEC. 107. TIMELY AND UNIFIED FEDERAL REVIEWS.

"(a) LEAD AGENCY.—

"(1) DESIGNATION.—

Determination.　　"(A) IN GENERAL.—If there are two or more participating Federal agencies, such agencies shall determine, by letter or memorandum, which agency shall be the lead agency based on consideration of the—

"(i) magnitude of agency's involvement;

"(ii) project approval or disapproval authority;

"(iii) expertise concerning the action's environmental effects;

"(iv) duration of agency's involvement; and

"(v) sequence of agency's involvement.

"(B) JOINT LEAD AGENCIES.—In making a determination under subparagraph (A), the participating Federal agencies may appoint such State, Tribal, or local agencies as joint lead agencies as the involved Federal agencies shall determine appropriate. Joint lead agencies shall jointly fulfill the role described in paragraph (2).

"(2) ROLE.—A lead agency shall, with respect to a proposed agency action—

"(A) supervise the preparation of an environmental document if, with respect to such proposed agency action, there is more than one participating Federal agency;

"(B) request the participation of each cooperating agency at the earliest practicable time;

"(C) in preparing an environmental document, give consideration to any analysis or proposal created by a cooperating agency;

Schedule.　　"(D) develop a schedule, in consultation with each cooperating agency, the applicant, and such other entities as the lead agency determines appropriate, for completion of any environmental review, permit, or authorization required to carry out the proposed agency action;

Determination.
Notification.
Compliance.　　"(E) if the lead agency determines that a review, permit, or authorization will not be completed in accordance with the schedule developed under subparagraph (D), notify the agency responsible for issuing such review, permit, or authorization of the discrepancy and request that such agency take such measures as such agency determines appropriate to comply with such schedule; and

"(F) meet with a cooperating agency that requests such a meeting.

"(3) COOPERATING AGENCY.—The lead agency may, with respect to a proposed agency action, designate any Federal, State, Tribal, or local agency that has jurisdiction by law or

PUBLIC LAW 118–5—JUN. 3, 2023          137 STAT. 41

special expertise with respect to any environmental impact involved in a proposal to serve as a cooperating agency. A cooperating agency may, not later than a date specified in the schedule established by the lead agency, submit comments to the lead agency.

Comments.

"(4) REQUEST FOR DESIGNATION.—Any Federal, State, Tribal, or local agency or person that is substantially affected by the lack of a designation of a lead agency with respect to a proposed agency action under paragraph (1) may submit a written request for such a designation to a participating Federal agency. An agency that receives a request under this paragraph shall transmit such request to each participating Federal agency and to the Council.

Transmittal.

"(5) COUNCIL DESIGNATION.—

"(A) REQUEST.—If the participating Federal agencies are unable to agree on the designation of a lead agency within 45 days of the request under paragraph (4), then the Federal, State, Tribal or local agency or person that is substantially affected by the lack or a designation of a lead agency may request that the Council designate a lead agency. Such request shall consist of—

"(i) a precise description of the nature and extent of the proposed agency action; and

"(ii) a detailed statement with respect to each participating Federal agency and each factor listed in paragraph (1) regarding which agency should serve as lead agency.

"(B) TRANSMISSION.—The Council shall transmit a request received under subparagraph (A) to each participating Federal agency.

"(C) RESPONSE.—A participating Federal agency may, not later than 20 days after the date of the submission of a request under subparagraph (A), submit to the Council a response to such request.

"(D) DESIGNATION.—Not later than 40 days after the date of the submission of a request under subparagraph (A), the Council shall designate the lead agency with respect to the relevant proposed agency action.

"(b) ONE DOCUMENT.—To the extent practicable, if a proposed agency action will require action by more than one Federal agency and the lead agency has determined that it requires preparation of an environmental document, the lead and cooperating agencies shall evaluate the proposal in a single environmental document.

Determination. Evaluation.

"(c) REQUEST FOR PUBLIC COMMENT.—Each notice of intent to prepare an environmental impact statement under section 102 shall include a request for public comment on alternatives or impacts and on relevant information, studies, or analyses with respect to the proposed agency action.

"(d) STATEMENT OF PURPOSE AND NEED.—Each environmental document shall include a statement of purpose and need that briefly summarizes the underlying purpose and need for the proposed agency action.

Summary.

"(e) PAGE LIMITS.—

"(1) ENVIRONMENTAL IMPACT STATEMENTS.—

"(A) IN GENERAL.—Except as provided in subparagraph (B), an environmental impact statement shall not exceed 150 pages, not including any citations or appendices.

"(B) EXTRAORDINARY COMPLEXITY.—An environmental impact statement for a proposed agency action of extraordinary complexity shall not exceed 300 pages, not including any citations or appendices.

"(2) ENVIRONMENTAL ASSESSMENTS.—An environmental assessment shall not exceed 75 pages, not including any citations or appendices.

Procedures.

"(f) SPONSOR PREPARATION.—A lead agency shall prescribe procedures to allow a project sponsor to prepare an environmental assessment or an environmental impact statement under the supervision of the agency. Such agency may provide such sponsor with appropriate guidance and assist in the preparation. The lead agency shall independently evaluate the environmental document and shall take responsibility for the contents.

Evaluation.

Determinations.
Notifications.

"(g) DEADLINES.—

"(1) IN GENERAL.—Except as provided in paragraph (2), with respect to a proposed agency action, a lead agency shall complete, as applicable—

"(A) the environmental impact statement not later than the date that is 2 years after the sooner of, as applicable—

"(i) the date on which such agency determines that section 102(2)(C) requires the issuance of an environmental impact statement with respect to such action;

"(ii) the date on which such agency notifies the applicant that the application to establish a right-of-way for such action is complete; and

"(iii) the date on which such agency issues a notice of intent to prepare the environmental impact statement for such action; and

"(B) the environmental assessment not later than the date that is 1 year after the sooner of, as applicable—

"(i) the date on which such agency determines that section 106(b)(2) requires the preparation of an environmental assessment with respect to such action;

"(ii) the date on which such agency notifies the applicant that the application to establish a right-of-way for such action is complete; and

"(iii) the date on which such agency issues a notice of intent to prepare the environmental assessment for such action.

Extension
authority.

"(2) DELAY.—A lead agency that determines it is not able to meet the deadline described in paragraph (1) may extend such deadline, in consultation with the applicant, to establish a new deadline that provides only so much additional time as is necessary to complete such environmental impact statement or environmental assessment.

"(3) PETITION TO COURT.—

Review.

"(A) RIGHT TO PETITION.—A project sponsor may obtain a review of an alleged failure by an agency to act in accordance with an applicable deadline under this section by filing a written petition with a court of competent jurisdiction seeking an order under subparagraph (B).

Schedule.
Deadline.
Compliance.

"(B) COURT ORDER.—If a court of competent jurisdiction finds that an agency has failed to act in accordance with an applicable deadline, the court shall set a schedule and deadline for the agency to act as soon as practicable, which

PUBLIC LAW 118–5—JUN. 3, 2023          137 STAT. 43

shall not exceed 90 days from the date on which the order of the court is issued, unless the court determines a longer time period is necessary to comply with applicable law.

"(h) REPORT.—

"(1) IN GENERAL.—The head of each lead agency shall annually submit to the Committee on Natural Resources of the House of Representatives and the Committee on Environment and Public Works of the Senate a report that—

"(A) identifies any environmental assessment and environmental impact statement that such lead agency did not complete by the deadline described in subsection (g); and

"(B) provides an explanation for any failure to meet such deadline.

"(2) INCLUSIONS.—Each report submitted under paragraph (1) shall identify, as applicable—

"(A) the office, bureau, division, unit, or other entity within the Federal agency responsible for each such environmental assessment and environmental impact statement;

"(B) the date on which—

"(i) such lead agency notified the applicant that the application to establish a right-of-way for the major Federal action is complete;

"(ii) such lead agency began the scoping for the major Federal action; or

"(iii) such lead agency issued a notice of intent to prepare the environmental assessment or environmental impact statement for the major Federal action; and

"(C) when such environmental assessment and environmental impact statement is expected to be complete.

## "SEC. 108. PROGRAMMATIC ENVIRONMENTAL DOCUMENT.

Time periods.
42 USC 4336b.

"When an agency prepares a programmatic environmental document for which judicial review was available, the agency may rely on the analysis included in the programmatic environmental document in a subsequent environmental document for related actions as follows:

"(1) Within 5 years and without additional review of the analysis in the programmatic environmental document, unless there are substantial new circumstances or information about the significance of adverse effects that bear on the analysis.

"(2) After 5 years, so long as the agency reevaluates the analysis in the programmatic environmental document and any underlying assumption to ensure reliance on the analysis remains valid.

Evaluation.

## "SEC. 109. ADOPTION OF CATEGORICAL EXCLUSIONS.

42 USC 4336c.

"An agency may adopt a categorical exclusion listed in another agency's NEPA procedures for a category of proposed agency actions for which the categorical exclusion was established consistent with this paragraph. The agency shall—

"(1) identify the categorical exclusion listed in another agency's NEPA procedures that covers a category of proposed actions or related actions;

137 STAT. 44          PUBLIC LAW 118–5—JUN. 3, 2023

Consultation.

"(2) consult with the agency that established the categorical exclusion to ensure that the proposed adoption of the categorical exclusion to a category of actions is appropriate;

Public information.

"(3) identify to the public the categorical exclusion that the agency plans to use for its proposed actions; and

"(4) document adoption of the categorical exclusion.

42 USC 4336d.

**"SEC. 110. E-NEPA.**

Reports.

"(a) PERMITTING PORTAL STUDY.—The Council on Environmental Quality shall conduct a study and submit a report to Congress within 1 year of the enactment of this Act on the potential for online and digital technologies to address delays in reviews and improve public accessibility and transparency under section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)(C)) including, but not limited to, a unified permitting portal that would—

"(1) allow applicants to—

"(A) submit required documents or materials for their project in one unified portal;

"(B) upload and collaborate with the applicable agencies to edit documents in real-time, as required;

"(C) upload and display visual features such as video, animation, geographic information system displays, and three-dimensional renderings; and

"(D) track the progress of individual applications;

"(2) include a cloud based, digital tool for more complex reviews that would enhance interagency coordination in consultation by—

"(A) centralizing, across all necessary agencies, the data, visuals, and documents, including but not limited to geographic information system displays, other visual renderings, and completed reports and analyses necessary for reviews;

"(B) streamlining communications between all necessary agencies and the applicant;

"(C) allowing for comments and responses by and to all necessary agencies in one unified portal;

"(D) generating analytical reports to aid in organizing and cataloguing public comments; and

"(E) be accessible on mobile devices;

"(3) boost transparency in agency processes and present information suitable for a lay audience, including but not limited to—

"(A) scientific data and analysis; and

"(B) anticipated agency process and timeline; and

"(4) include examples describing how at least five permits would be reviewed and processed through this portal.

"(b) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated $500,000 for the Council on Environmental Quality to carry out the study directed by this section.

42 USC 4336e.

**"SEC. 111. DEFINITIONS.**

"In this title:

"(1) CATEGORICAL EXCLUSION.—The term 'categorical exclusion' means a category of actions that a Federal agency has determined normally does not significantly affect the quality of the human environment within the meaning of section 102(2)(C).

"(2) COOPERATING AGENCY.—The term 'cooperating agency' means any Federal, State, Tribal, or local agency that has been designated as a cooperating agency under section 107(a)(3).

"(3) COUNCIL.—The term 'Council' means the Council on Environmental Quality established in title II.

"(4) ENVIRONMENTAL ASSESSMENT.—The term 'environmental assessment' means an environmental assessment prepared under section 106(b)(2).

"(5) ENVIRONMENTAL DOCUMENT.—The term 'environmental document' means an environmental impact statement, an environmental assessment, or a finding of no significant impact.

"(6) ENVIRONMENTAL IMPACT STATEMENT.—The term 'environmental impact statement' means a detailed written statement that is required by section 102(2)(C).

"(7) FINDING OF NO SIGNIFICANT IMPACT.—The term 'finding of no significant impact' means a determination by a Federal agency that a proposed agency action does not require the issuance of an environmental impact statement.

"(8) PARTICIPATING FEDERAL AGENCY.—The term 'participating Federal agency' means a Federal agency participating in an environmental review or authorization of an action.

"(9) LEAD AGENCY.—The term 'lead agency' means, with respect to a proposed agency action—

"(A) the agency that proposed such action; or

"(B) if there are 2 or more involved Federal agencies with respect to such action, the agency designated under section 107(a)(1).

"(10) MAJOR FEDERAL ACTION.—

"(A) IN GENERAL.—The term 'major Federal action' means an action that the agency carrying out such action determines is subject to substantial Federal control and responsibility.

"(B) EXCLUSION.—The term 'major Federal action' does not include—

"(i) a non-Federal action—

"(I) with no or minimal Federal funding; or

"(II) with no or minimal Federal involvement where a Federal agency cannot control the outcome of the project;

"(ii) funding assistance solely in the form of general revenue sharing funds which do not provide Federal agency compliance or enforcement responsibility over the subsequent use of such funds;

"(iii) loans, loan guarantees, or other forms of financial assistance where a Federal agency does not exercise sufficient control and responsibility over the subsequent use of such financial assistance or the effect of the action;

"(iv) business loan guarantees provided by the Small Business Administration pursuant to section 7(a) or (b) and of the Small Business Act ( U.S.C. 636(a)), or title V of the Small Business Investment Act of 1958 (15 U.S.C. 695 et seq.);

"(v) bringing judicial or administrative civil or criminal enforcement actions;

137 STAT. 46          PUBLIC LAW 118–5—JUN. 3, 2023

"(vi) extraterritorial activities or decisions, which means agency activities or decisions with effects located entirely outside of the jurisdiction of the United States; or

"(vii) activities or decisions that are non-discretionary and made in accordance with the agency's statutory authority.

"(11) PROGRAMMATIC ENVIRONMENTAL DOCUMENT.—The term 'programmatic environmental document' means an environmental impact statement or environmental assessment analyzing all or some of the environmental effects of a policy, program, plan, or group of related actions.

"(12) PROPOSAL.—The term 'proposal' means a proposed action at a stage when an agency has a goal, is actively preparing to make a decision on one or more alternative means of accomplishing that goal, and can meaningfully evaluate its effects.

"(13) SPECIAL EXPERTISE.—The term 'special expertise' means statutory responsibility, agency mission, or related program experience.".

Recommendations.

**SEC. 322. INTERREGIONAL TRANSFER CAPABILITY DETERMINATION STUDY.**

(a) IN GENERAL.—The Electric Reliability Organization (as that term is defined in section 215(a)(2) of the Federal Power Act), in consultation with each regional entity (as that term is defined in section 215(a)(7) of such Act) and each transmitting utility (as that term is defined in section 3(23) of such Act) that has facilities interconnected with a transmitting utility in a neighboring transmission planning region, shall conduct a study of total transfer capability as defined in section 37.6(b)(1)(vi) of title 18, Code of Federal Regulations, between transmission planning regions that contains the following:

(1) Current total transfer capability, between each pair of neighboring transmission planning regions.

(2) A recommendation of prudent additions to total transfer capability between each pair of neighboring transmission planning regions that would demonstrably strengthen reliability within and among such neighboring transmission planning regions.

(3) Recommendations to meet and maintain total transfer capability together with such recommended prudent additions to total transfer capability between each pair of neighboring transmission planning regions.

Deadline.
Federal Register, publication.
Public comments.

(b) PUBLICATION.—Not later than 18 months after the date of enactment of this Act, the North American Electric Reliability Corporation shall deliver a study to Federal Energy Regulatory Commission, which shall publish the study required in subsection (a) in the Federal Register and seek public comments.

(c) REPORT.—Not later than 12 months after the end of the public comment period in subsection (b), the Federal Energy Regulatory Commission shall submit a report on its conclusions to Congress and include recommendations, if any, for statutory changes.

**SEC. 323. PERMITTING STREAMLINING FOR ENERGY STORAGE.**

Section 41001(6)(A) of the FAST Act (42 U.S.C. 4370m(6)(A)) is amended by inserting "energy storage," before "or any other sector".

BUILDER Act, H.R. 1577, 118th Cong. (2023)

I

118TH CONGRESS
1ST SESSION

# H. R. 1577

To amend the National Environmental Policy Act of 1969 to clarify ambiguous provisions, reflect modern technologies, optimize interagency coordination, and facilitate a more efficient, effective, and timely environmental review process.

---

## IN THE HOUSE OF REPRESENTATIVES

MARCH 14, 2023

Mr. GRAVES of Louisiana introduced the following bill; which was referred to the Committee on Natural Resources

---

# A BILL

To amend the National Environmental Policy Act of 1969 to clarify ambiguous provisions, reflect modern technologies, optimize interagency coordination, and facilitate a more efficient, effective, and timely environmental review process.

1　　*Be it enacted by the Senate and House of Representa-*

2　*tives of the United States of America in Congress assembled,*

3　**SECTION 1. SHORT TITLE.**

4　　This Act may be cited as the "BUILDER Act of

5　2023" or the "Building United States Infrastructure

6　through Limited Delays and Efficient Reviews Act of

7　2023".

1 SEC. 2. NATIONAL ENVIRONMENTAL POLICY ACT OF 1969.

2 (a) PARAGRAPH (2) OF SECTION 102.—Section

3 102(2) of the National Environmental Policy Act of 1969

4 (42 U.S.C. 4332(2)) is amended—

5     (1) in subparagraph (A), by striking "insure"

6     and inserting "ensure";

7     (2) in subparagraph (B), by striking "insure"

8     and inserting "ensure";

9     (3) in subparagraph (C)—

10         (A) by inserting "consistent with the provi-

11         sions of this Act and except as provided by

12         other provisions of law," before "include in

13         every";

14         (B) by striking clauses (i) through (v) and

15         inserting the following:

16         "(i) reasonably foreseeable environmental

17         effects with a reasonably close causal relation-

18         ship to the proposed agency action;

19         "(ii) any reasonably foreseeable adverse en-

20         vironmental effects which cannot be avoided

21         should the proposal be implemented;

22         "(iii) a reasonable number of alternatives

23         to the proposed agency action, including an

24         analysis of any negative environmental impacts

25         of not implementing the proposed agency action

26         in the case of a no action alternative, that are

3

1    technically and economically feasible, are within

2    the jurisdiction of the agency, meet the purpose

3    and need of the proposal, and, where applicable,

4    meet the goals of the applicant;

5     ''(iv) the relationship between local short-

6    term uses of man's environment and the main-

7    tenance and enhancement of long-term produc-

8    tivity; and

9     ''(v) any irreversible and irretrievable com-

10    mitments of Federal resources which would be

11    involved in the proposed agency action should it

12    be implemented.''; and

13    (C) by striking ''the responsible Federal

14    official'' and inserting ''the head of the lead

15    agency'';

16   (4) in subparagraph (D), by striking ''Any''

17  and inserting ''any'';

18   (5) by redesignating subparagraphs (D)

19  through (I) as subparagraphs (F) through (K), re-

20  spectively;

21   (6) by inserting after subparagraph (C) the fol-

22  lowing:

23   ''(D) ensure the professional integrity, including

24  scientific integrity, of the discussion and analysis in

25  an environmental document;

4

1             ''(E) make use of reliable existing data and re-

2     sources in carrying out this Act;'';

3            (7) by amending subparagraph (G), as redesig-

4     nated, to read as follows:

5            ''(G) consistent with the provisions of this Act,

6     study, develop, and describe technically and economi-

7     cally feasible alternatives within the jurisdiction and

8     authority of the agency;''; and

9            (8) in subparagraph (H), as amended, by in-

10     serting ''consistent with the provisions of this Act,''

11     before ''recognize''.

12     (b) New Sections.—Title I of the National Envi-

13 ronmental Policy Act of 1969 (42 U.S.C. 4321 et seq.)

14 is amended by adding at the end the following:

**15 ''SEC. 106. PROCEDURE FOR DETERMINATION OF LEVEL OF**

**16             REVIEW.**

17     ''(a) Threshold Determinations.—An agency is

18 not required to prepare an environmental document with

19 respect to a proposed agency action if—

20            ''(1) the proposed agency action is not a final

21     agency action within the meaning of such term in

22     chapter 5 of title 5, United States Code;

23            ''(2) the proposed agency action is covered by

24     a categorical exclusion established by the agency, an-

25     other Federal agency, or another provision of law;

5

1          ''(3) the preparation of such document would

2    clearly and fundamentally conflict with the require-

3    ments of another provision of law;

4          ''(4) the proposed agency action is, in whole or

5    in part, a nondiscretionary action with respect to

6    which such agency does not have authority to take

7    environmental factors into consideration in deter-

8    mining whether to take the proposed action;

9          ''(5) the proposed agency action is a rulemaking

10    that is subject to section 553 of title 5, United

11    States Code; or

12         ''(6) the proposed agency action is an action for

13    which such agency's compliance with another stat-

14    ute's requirements serve the same or similar func-

15    tion as the requirements of this Act with respect to

16    such action.

17    ''(b) LEVELS OF REVIEW.—

18         ''(1) ENVIRONMENTAL IMPACT STATEMENT.—

19    An agency shall issue an environmental impact

20    statement with respect to a proposed agency action

21    that has a significant effect on the quality of the

22    human environment.

23         ''(2) ENVIRONMENTAL ASSESSMENT.—An agen-

24    cy shall prepare an environmental assessment with

25    respect to a proposed agency action that is not likely

1     to have a significant effect on the quality of the

2     human environment, or if the significance of such ef-

3     fect is unknown, unless the agency finds that a cat-

4     egorical exclusion established by the agency, another

5     Federal agency, or another provision of law applies.

6     Such environmental assessment shall be a concise

7     public document prepared by a Federal agency to set

8     forth the basis of such agency's finding of no signifi-

9     cant impact.

10         "(3) SOURCES OF INFORMATION.—In making a

11     determination under this subsection, an agency—

12             "(A) may make use of any reliable data

13         source; and

14             "(B) is not required to undertake new sci-

15         entific or technical research.

16 **"SEC. 107. TIMELY AND UNIFIED FEDERAL REVIEWS.**

17     "(a) LEAD AGENCY.—

18         "(1) DESIGNATION.—

19             "(A) IN GENERAL.—If there are two or

20         more involved Federal agencies, such agencies

21         shall determine, by letter or memorandum,

22         which agency shall be the lead agency based on

23         consideration of the following factors:

24                 "(i) Magnitude of agency's involve-

25         ment.

7

1                   "(ii) Project approval or disapproval

2              authority.

3                   "(iii) Expertise concerning the ac-

4              tion's environmental effects.

5                   "(iv) Duration of agency's involve-

6              ment.

7                   "(v) Sequence of agency's involve-

8              ment.

9         "(B) JOINT LEAD AGENCIES.—In making

10     a determination under subparagraph (A), the

11     involved Federal agencies may, in addition to a

12     Federal agency, appoint such Federal, State,

13     Tribal, or local agencies as joint lead agencies

14     as the involved Federal agencies shall determine

15     appropriate. Joint lead agencies shall jointly

16     fulfill the role described in paragraph (2).

17         "(C) MINERAL PROJECTS.—This para-

18     graph shall not apply with respect to a mineral

19     exploration or mine permit.

20         "(2) ROLE.—A lead agency shall, with respect

21   to a proposed agency action—

22         "(A) supervise the preparation of an envi-

23     ronmental document if, with respect to such

24     proposed agency action, there is more than one

25     involved Federal agency;

8

1        ''(B) request the participation of each co-

2      operating agency at the earliest practicable

3      time;

4        ''(C) in preparing an environmental docu-

5      ment, give consideration to any analysis or pro-

6      posal created by a cooperating agency with ju-

7      risdiction by law or a cooperating agency with

8      special expertise;

9        ''(D) develop a schedule, in consultation

10     with each involved cooperating agency, the ap-

11     plicant, and such other entities as the lead

12     agency determines appropriate, for completion

13     of any environmental review, permit, or author-

14     ization required to carry out the proposed agen-

15     cy action;

16       ''(E) if the lead agency determines that a

17     review, permit, or authorization will not be com-

18     pleted in accordance with the schedule devel-

19     oped under subparagraph (D), notify the agen-

20     cy responsible for issuing such review, permit,

21     or authorization of the discrepancy and request

22     that such agency take such measures as such

23     agency determines appropriate to comply with

24     such schedule; and

9

1          "(F) meet with a cooperating agency that
2      requests such a meeting.

3      "(3) COOPERATING AGENCY.—The lead agency
4  may, with respect to a proposed agency action, des-
5  ignate any involved Federal agency or a State, Trib-
6  al, or local agency as a cooperating agency. A co-
7  operating agency may, not later than a date speci-
8  fied by the lead agency, submit comments to the
9  lead agency. Such comments shall be limited to mat-
10  ters relating to the proposed agency action with re-
11  spect to which such agency has special expertise or
12  jurisdiction by law with respect to an environmental
13  issue.

14      "(4) REQUEST FOR DESIGNATION.—Any Fed-
15  eral, State, Tribal, or local agency or person that is
16  substantially affected by the lack of a designation of
17  a lead agency with respect to a proposed agency ac-
18  tion under paragraph (1) may submit a written re-
19  quest for such a designation to an involved Federal
20  agency. An agency that receives a request under this
21  paragraph shall transmit such request to each in-
22  volved Federal agency and to the Council.

23      "(5) COUNCIL DESIGNATION.—

24          "(A) REQUEST.—Not earlier than 45 days
25      after the date on which a request is submitted

10

1     under paragraph (4), if no designation has been
2     made under paragraph (1), a Federal, State,
3     Tribal, or local agency or person that is sub-
4     stantially affected by the lack of a designation
5     of a lead agency may request that the Council
6     designate a lead agency. Such request shall con-
7     sist of—

8          ''(i) a precise description of the nature
9          and extent of the proposed agency action;
10         and

11         ''(ii) a detailed statement with respect
12         to each involved Federal agency and each
13         factor listed in paragraph (1) regarding
14         which agency should serve as lead agency.

15    ''(B) TRANSMISSION.—The Council shall
16    transmit a request received under subparagraph
17    (A) to each involved Federal agency.

18    ''(C) RESPONSE.—An involved Federal
19    agency may, not later than 20 days after the
20    date of the submission of a request under sub-
21    paragraph (A), submit to the Council a re-
22    sponse to such request.

23    ''(D) DESIGNATION.—Not later than 40
24    days after the date of the submission of a re-
25    quest under subparagraph (A), the Council

11

1         shall designate the lead agency with respect to

2         the relevant proposed agency action.

3   ''(b) ONE DOCUMENT.—

4       ''(1) DOCUMENT.—To the extent practicable, if

5 there are 2 or more involved Federal agencies with

6 respect to a proposed agency action and the lead

7 agency has determined that an environmental docu-

8 ment is required, such requirement shall be deemed

9 satisfied with respect to all involved Federal agencies

10 if the lead agency issues such an environmental doc-

11 ument.

12       ''(2) CONSIDERATION TIMING.—In developing

13 an environmental document for a proposed agency

14 action, no involved Federal agency shall be required

15 to consider any information that becomes available

16 after the sooner of, as applicable—

17         ''(A) receipt of a complete application with

18         respect to such proposed agency action; or

19         ''(B) publication of a notice of intent or

20         decision to prepare an environmental impact

21         statement for such proposed agency action.

22       ''(3) SCOPE OF REVIEW.—In developing an en-

23 vironmental document for a proposed agency action,

24 the lead agency and any other involved Federal

12

1      agencies shall only consider the effects of the pro-
2      posed agency action that—

3              ''(A) occur on Federal land; or

4              ''(B) are subject to Federal control and re-
5          sponsibility.

6      ''(c) REQUEST FOR PUBLIC COMMENT.—Each notice
7  of intent to prepare an environmental impact statement
8  under section 102 shall include a request for public com-
9  ment on alternatives or impacts and on relevant informa-
10 tion, studies, or analyses with respect to the proposed
11 agency action.

12     ''(d) STATEMENT OF PURPOSE AND NEED.—Each
13 environmental impact statement shall include a statement
14 of purpose and need that briefly summarizes the under-
15 lying purpose and need for the proposed agency action.

16     ''(e) ESTIMATED TOTAL COST.—The cover sheet for
17 each environmental impact statement shall include a state-
18 ment of the estimated total cost of preparing such environ-
19 mental impact statement, including the costs of agency
20 full-time equivalent personnel hours, contractor costs, and
21 other direct costs.

22     ''(f) PAGE LIMITS.—

23              ''(1) ENVIRONMENTAL IMPACT STATEMENTS.—

24                  ''(A) IN GENERAL.—Except as provided in
25              subparagraph (B), an environmental impact

13

1        statement shall not exceed 150 pages, not in-

2        cluding any citations or appendices.

3               "(B) EXTRAORDINARY COMPLEXITY.—An

4        environmental impact statement for a proposed

5        agency action of extraordinary complexity shall

6        not exceed 300 pages, not including any cita-

7        tions or appendices.

8        "(2) ENVIRONMENTAL ASSESSMENTS.—An en-

9        vironmental assessment shall not exceed 75 pages,

10       not including any citations or appendices.

11     "(g) SPONSOR PREPARATION.—A lead agency shall

12  allow a project sponsor to prepare an environmental as-

13  sessment or an environmental impact statement upon re-

14  quest of the project sponsor. Such agency may provide

15  such sponsor with appropriate guidance and assist in the

16  preparation. The lead agency shall independently evaluate

17  the environmental document and shall take responsibility

18  for the contents upon adoption.

19     "(h) DEADLINES.—

20        "(1) IN GENERAL.—Except as provided in para-

21        graph (2), with respect to a proposed agency action,

22        a lead agency shall complete, as applicable—

23               "(A) the environmental impact statement

24               not later than the date that is 2 years after the

25               sooner of, as applicable—

14

1          "(i) the date on which such agency
2     determines that section 102(2)(C) requires
3     the issuance of an environmental impact
4     statement with respect to such action;

5          "(ii) the date on which such agency
6     notifies the applicant that the application
7     to establish a right-of-way for such action
8     is complete; and

9          "(iii) the date on which such agency
10    issues a notice of intent to prepare the en-
11    vironmental impact statement for such ac-
12    tion; and

13        "(B) the environmental assessment not
14    later than the date that is 1 year after the
15    sooner of, as applicable—

16         "(i) the date on which such agency
17    determines that section 106(b)(2) requires
18    the preparation of an environmental as-
19    sessment with respect to such action;

20         "(ii) the date on which such agency
21    notifies the applicant that the application
22    to establish a right-of-way for such action
23    is complete; and

15

1              ''(iii) the date on which such agency

2              issues a notice of intent to prepare the en-

3              vironmental assessment for such action.

4        ''(2) DELAY.—A lead agency that determines it

5    is not able to meet the deadline described in para-

6    graph (1) may extend such deadline with the ap-

7    proval of the applicant. If the applicant approves

8    such an extension, the lead agency shall establish a

9    new deadline that provides only so much additional

10   time as is necessary to complete such environmental

11   impact statement or environmental assessment.

12       ''(3) EXPENDITURES FOR DELAY.—If a lead

13   agency is unable to meet the deadline described in

14   paragraph (1) or extended under paragraph (2), the

15   lead agency must pay $100 per day, to the extent

16   funding is provided in advance in an appropriations

17   Act, out of the office of the head of the department

18   of the lead agency to the applicant starting on the

19   first day immediately following the deadline de-

20   scribed in paragraph (1) or extended under para-

21   graph (2) up until the date that an applicant ap-

22   proves a new deadline. This paragraph does not

23   apply when the lead agency misses a deadline solely

24   due to delays caused by litigation.

25   ''(i) REPORT.—

16

1       ''(1) IN GENERAL.—The head of each lead

2   agency shall annually submit to the Committee on

3   Natural Resources of the House of Representatives

4   and the Committee on Environment and Public

5   Works of the Senate a report that—

6           ''(A) identifies any environmental assess-

7       ment and environmental impact statement that

8       such lead agency did not complete by the dead-

9       line described in subsection (h); and

10          ''(B) provides an explanation for any fail-

11      ure to meet such deadline.

12      ''(2) INCLUSIONS.—Each report submitted

13  under paragraph (1) shall identify, as applicable—

14          ''(A) the office, bureau, division, unit, or

15      other entity within the Federal agency respon-

16      sible for each such environmental assessment

17      and environmental impact statement;

18          ''(B) the date on which—

19              ''(i) such lead agency notified the ap-

20          plicant that the application to establish a

21          right-of-way for the major Federal action

22          is complete;

23              ''(ii) such lead agency began the

24          scoping for the major Federal action; or

17

1          ''(iii) such lead agency issued a notice

2              of intent to prepare the environmental as-

3              sessment or environmental impact state-

4              ment for the major Federal action; and

5          ''(C) when such environmental assessment

6              and environmental impact statement is expected

7              to be complete.

8  **''SEC. 108. JUDICIAL REVIEW.**

9      ''(a) LIMITATIONS ON CLAIMS.—Notwithstanding

10  any other provision of law, a claim arising under Federal

11  law seeking judicial review of compliance with this Act,

12  of a determination made under this Act, or of Federal ac-

13  tion resulting from a determination made under this Act,

14  shall be barred unless—

15          ''(1) in the case of a claim pertaining to a pro-

16              posed agency action for which—

17                  ''(A) an environmental document was pre-

18                      pared and an opportunity for comment was pro-

19                      vided;

20                  ''(B) the claim is filed by a party that par-

21                      ticipated in the administrative proceedings re-

22                      garding such environmental document; and

23                  ''(C) the claim—

24                      ''(i) is filed by a party that submitted

25                          a comment during the public comment pe-

18

1           riod for such administrative proceedings

2           and such comment was sufficiently detailed

3           to put the lead agency on notice of the

4           issue upon which the party seeks judicial

5           review; and

6                ''(ii) is related to such comment;

7      ''(2) except as provided in subsection (b), such

8 claim is filed not later than 120 days after the date

9 of publication of a notice in the Federal Register of

10 agency intent to carry out the proposed agency ac-

11 tion;

12      ''(3) such claim is filed after the issuance of a

13 record of decision or other final agency action with

14 respect to the relevant proposed agency action;

15      ''(4) such claim does not challenge the estab-

16 lishment or use of a categorical exclusion under sec-

17 tion 102; and

18      ''(5) such claim concerns—

19           ''(A) an alternative included in the envi-

20           ronmental document; or

21           ''(B) an environmental effect considered in

22           the environmental document.

23     ''(b) SUPPLEMENTAL ENVIRONMENTAL IMPACT

24 STATEMENT.—

19

1        "(1) SEPARATE FINAL AGENCY ACTION.—The

2    issuance of a Federal action resulting from a final

3    supplemental environmental impact statement shall

4    be considered a final agency action for the purposes

5    of chapter 5 of title 5, United States Code, separate

6    from the issuance of any previous environmental im-

7    pact statement with respect to the same proposed

8    agency action.

9        "(2) DEADLINE FOR FILING A CLAIM.—A claim

10   seeking judicial review of a Federal action resulting

11   from a final supplemental environmental review

12   issued under section 102(2)(C) shall be barred un-

13   less—

14        "(A) such claim is filed within 120 days of

15        the date on which a notice of the Federal agen-

16        cy action resulting from a final supplemental

17        environmental impact statement is issued; and

18        "(B) such claim is based on information

19        contained in such supplemental environmental

20        impact statement that was not contained in a

21        previous environmental document pertaining to

22        the same proposed agency action.

23   "(c) PROHIBITION ON INJUNCTIVE RELIEF.—Not-

24   withstanding any other provision of law, a violation of this

25   Act shall not constitute the basis for injunctive relief.

1 ''(d) RULE OF CONSTRUCTION.—Nothing in this sec-

2 tion shall be construed to create a right of judicial review

3 or place any limit on filing a claim with respect to the

4 violation of the terms of a permit, license, or approval.

5 ''(e) REMAND.—Notwithstanding any other provision

6 of law, no proposed agency action for which an environ-

7 mental document is required shall be vacated or otherwise

8 limited, delayed, or enjoined unless a court concludes al-

9 lowing such proposed action will pose a risk of an immi-

10 nent and substantial environmental harm and there is no

11 other equitable remedy available as a matter of law.

12 **''SEC. 109. DEFINITIONS.**

13     ''In this title:

14         ''(1) CATEGORICAL EXCLUSION.—The term

15     'categorical exclusion' means a category of actions

16     that a Federal agency has determined normally does

17     not significantly affect the quality of the human en-

18     vironment within the meaning of section 102(2)(C).

19         ''(2) COOPERATING AGENCY.—The term 'co-

20     operating agency' means any Federal, State, Tribal,

21     or local agency that has been designated as a co-

22     operating agency under section 107(a)(3).

23         ''(3) COUNCIL.—The term 'Council' means the

24     Council on Environmental Quality established in

25     title II.

21

1        ''(4)   ENVIRONMENTAL   ASSESSMENT.—The
2   term 'environmental assessment' means an environ-
3   mental   assessment   prepared   under   section
4   106(b)(2).

5        ''(5) ENVIRONMENTAL DOCUMENT.—The term
6   'environmental document' means an environmental
7   impact statement, an environmental assessment, or
8   a finding of no significant impact.

9        ''(6)  ENVIRONMENTAL  IMPACT  STATEMENT.—
10  The term 'environmental impact statement' means a
11  detailed written statement that is required by section
12  102(2)(C).

13       ''(7)  FINDING OF NO SIGNIFICANT IMPACT.—
14  The term 'finding of no significant impact' means a
15  determination by a Federal agency that a proposed
16  agency action does not require the issuance of an en-
17  vironmental impact statement.

18       ''(8) INVOLVED FEDERAL AGENCY.—The term
19  'involved Federal agency' means an agency that,
20  with respect to a proposed agency action—

21            ''(A) proposed such action; or

22            ''(B) is involved in such action because
23       such action is directly related, through func-
24       tional interdependence or geographic proximity,

22

1    to an action such agency has taken or has pro-
2    posed to take.
3    ''(9) LEAD AGENCY.—
4        ''(A) IN GENERAL.—Except as provided in
5    subparagraph (B), the term 'lead agency'
6    means, with respect to a proposed agency ac-
7    tion—
8            ''(i) the agency that proposed such ac-
9        tion; or
10            ''(ii) if there are 2 or more involved
11        Federal agencies with respect to such ac-
12        tion, the agency designated under section
13        107(a)(1).
14        ''(B) SPECIFICATION FOR MINERAL EX-
15    PLORATION OR MINE PERMITS.—With respect
16    to a proposed mineral exploration or mine per-
17    mit, the term 'lead agency' has the meaning
18    given such term in section 40206(a) of the In-
19    frastructure Investment and Jobs Act.
20    ''(10) MAJOR FEDERAL ACTION.—
21        ''(A) IN GENERAL.—The term 'major Fed-
22    eral action' means an action that the agency
23    carrying out such action determines is subject
24    to substantial Federal control and responsi-
25    bility.

23

1     "(B) EXCLUSION.—The term 'major Fed-

2  eral action' does not include—

3     "(i) a non-Federal action—

4      "(I) with no or minimal Federal

5      funding;

6      "(II) with no or minimal Federal

7      involvement where a Federal agency

8      cannot control the outcome of the

9      project; or

10      "(III) that does not include Fed-

11      eral land;

12     "(ii) funding assistance solely in the

13     form of general revenue sharing funds

14     which do not provide Federal agency com-

15     pliance or enforcement responsibility over

16     the subsequent use of such funds;

17     "(iii) loans, loan guarantees, or other

18     forms of financial assistance where a Fed-

19     eral agency does not exercise sufficient

20     control and responsibility over the effect of

21     the action;

22     "(iv) farm ownership and operating

23     loan guarantees by the Farm Service

24     Agency pursuant to sections 305 and 311

25     through 319 of the Consolidated Farmers

24

1                Home Administration Act of 1961 (7

2                U.S.C. 1925 and 1941 through 1949);

3                    ''(v) business loan guarantees pro-

4                vided by the Small Business Administra-

5                tion pursuant to section 7(a) or (b) and of

6                the Small Business Act (15 U.S.C.

7                636(a)), or title V of the Small Business

8                Investment Act of 1958 (15 U.S.C. 695 et

9                seq.);

10                   ''(vi) bringing judicial or administra-

11                tive civil or criminal enforcement actions;

12                or

13                   ''(vii) extraterritorial activities or deci-

14                sions, which means agency activities or de-

15                cisions with effects located entirely outside

16                of the jurisdiction of the United States.

17              ''(C) ADDITIONAL EXCLUSIONS.—An agen-

18           cy action may not be determined to be a major

19           Federal action on the basis of—

20                   ''(i) an interstate effect of the action

21                or related project; or

22                   ''(ii) the provision of Federal funds

23                for the action or related project.

24             ''(11) MINERAL EXPLORATION OR MINE PER-

25         MIT.—The term 'mineral exploration or mine permit'

1    has the meaning given such term in section

2    40206(a) of the Infrastructure Investment and Jobs

3    Act.

4        ''(12) PROPOSAL.—The term 'proposal' means

5    a proposed action at a stage when an agency has a

6    goal, is actively preparing to make a decision on one

7    or more alternative means of accomplishing that

8    goal, and can meaningfully evaluate its effects.

9        ''(13) REASONABLY FORESEEABLE.—The term

10    'reasonably foreseeable' means likely to occur—

11        ''(A) not later than 10 years after the lead

12        agency begins preparing the environmental doc-

13        ument; and

14        ''(B) in an area directly affected by the

15        proposed agency action such that an individual

16        of ordinary prudence would take such occur-

17        rence into account in reaching a decision.

18        ''(14) SPECIAL EXPERTISE.—The term 'special

19    expertise' means statutory responsibility, agency

20    mission, or related program experience.''.

21    **SEC. 3. E–NEPA.**

22    (a) PERMITTING PORTAL STUDY.—The Council on

23  Environmental Quality shall conduct a study and submit

24  a report to Congress within 1 year of the enactment of

25  this Act on the potential to create an online permitting

26

1 portal for permits that require review under section
2 102(2)(C) of the National Environmental Policy Act of
3 1969 (42 U.S.C. 4332(2)(C)) that would—

4     (1) allow applicants to—

5         (A) submit required documents or mate-
6         rials for their application in one unified portal;

7         (B) upload additional documents as re-
8         quired by the applicable agency; and

9         (C) track the progress of individual appli-
10         cations;

11     (2) enhance interagency coordination in con-
12     sultation by—

13         (A) allowing for comments in one unified
14         portal;

15         (B) centralizing data necessary for reviews;
16         and

17         (C) streamlining communications between
18         other agencies and the applicant; and

19     (3) boost transparency in agency decision-
20     making.

21     (b) AUTHORIZATION OF APPROPRIATIONS.—There is
22 authorized to be appropriated $500,000 for the Council
23 on Environmental Quality to carry out the study directed
24 by this section.

○