Case No. 22-16613

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

PRUTEHI LITEKYAN: SAVE RITIDIAN,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF THE AIR FORCE; TROY E. MEINK, Secretary of the Air Force;[1] UNITED STATES DEPARTMENT OF DEFENSE; and PETE HEGSETH, Secretary of Defense,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GUAM

Civil Case No. 22-00001, Honorable Frances M. Tydingco-Gatewood

---

## PLAINTIFF-APPELLANT'S BRIEF IN OPPOSITION TO PANEL REHEARING AND REHEARING EN BANC

---

DAVID L. HENKIN
EARTHJUSTICE
850 Richards St., Suite 400
Honolulu, HI 96813
T: (808) 599-2436
Email: dhenkin@earthjustice.org

THIEN T. CHAU
EARTHJUSTICE
1001 G St., NW, Suite 1000
Washington, D.C. 20001
T: (202) 745-5226
Email: tchau@earthjustice.org

Attorneys for Plaintiff-Appellant Prutehi Litekyan: Save Ritidian

---

[1] The successors in office of named public officials are automatically substituted as parties. *See* Fed. R. App. P. 43(c)(2).

June 10, 2025

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................3

ARGUMENT ....................................................................................8

I.     NO FURTHER REVIEW IS WARRANTED OF THE PANEL'S FINDING OF FINAL AGENCY ACTION ....................................................8

     A.    The Panel Correctly Found The First *Bennett* Prong Met ...................8

     B.    The Panel Correctly Found The Second *Bennett* Prong Met.............11

II.    NO FURTHER REVIEW IS WARRANTED OF THE PANEL'S RULING THAT NEPA APPLIES TO THE AIR FORCE'S DECISION ....................................................................................16

CONCLUSION ................................................................................19

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alabama ex rel. Siegelman v. U.S. EPA*,
  911 F.2d 499 (11th Cir. 1990) ............................................................................18

*Bennett v. Spear*,
  520 U.S. 154 (1997)..................................................................................6, 8

*Biden v. Texas*,
  597 U.S. 785 (2022)..........................................................................................9

*California Communities Against Toxics v. EPA*,
  934 F.3d 627 (D.C. Cir. 2019)..................................................................1, 13, 14

*CBD v. Haaland*,
  58 F.4th 412 (9th Cir. 2023) ..........................................................................13

*Chemours Co. v. EPA*,
  109 F.4th 179 (3d Cir. 2024) ..........................................................................13

*City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*,
  123 F.3d 1142 (9th Cir. 1997) ..........................................................................17

*Columbia Riverkeeper v. U.S. Coast Guard*,
  761 F.3d 1084 (9th Cir. 2014) ..................................................................9, 13

*Dalton v. Specter*,
  511 U.S. 462 (1994)..........................................................................................12

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)..........................................................................................12

*FTC v. Standard Oil*,
  449 U.S. 232 (1980)..........................................................................................15

*Gill v. U.S. Dep't of Just.*,
  913 F.3d 1179 (9th Cir. 2019) ..........................................................................12

*Industrial Customers of Nw. Utilities v. BPA*,
  408 F.3d 638 (9th Cir. 2005) ..........................................................................15

ii

**Page(s)**

**CASES (Continued)**

*Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*,
 861 F.3d 944 (9th Cir. 2017) .......................................................................9, 13

*Lands Council v. Powell*,
 395 F.3d 1019 (9th Cir. 2005) .............................................................................3

*Merrell v. Thomas*,
 807 F.2d 776 (9th Cir. 1986) .............................................................................18

*Robertson v. Methow Valley Citizens Council*,
 490 U.S. 332 (1989).............................................................................................17

*Sackett v. EPA*,
 566 U.S. 120 (2012).............................................................................................12

*Southern California Alliance of Publicly Owned Treatment Works v. EPA*,
 8 F.4th 831 (9th Cir. 2021) ...............................................................................13

*United States Army Corps of Engineers v. Hawkes Co.*,
 578 U.S. 590 (2016).............................................................................................12

*Wild Fish Conservancy v. Jewell*,
 730 F.3d 791 (9th Cir. 2013) ...............................................................................9

**UNITED STATES CODE**

5 U.S.C. § 551(4) .........................................................................................................8

National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*.................................2

42 U.S.C. § 4332(2)(C).................................................................................................3

Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* .....................3

42 U.S.C. § 6925............................................................................................................3

42 U.S.C. § 6925(c)(1)................................................................................................10

42 U.S.C. § 6925(c)(3)................................................................................................10

iii

Page(s)

## CODE OF FEDERAL REGULATIONS

40 C.F.R. § 264.601 ...............................................................................10

40 C.F.R. § 265.382 ...............................................................................10

40 C.F.R. § 266.204 .................................................................................4

40 C.F.R. § 270.1(c)(3)(i)(D) ...................................................................4

40 C.F.R. § 270.13(i) ...............................................................................4

40 C.F.R. § 270.14(b)(8) ..........................................................................4

40 C.F.R. § 270.23(b) ...............................................................................4

40 C.F.R. § 270.51 ...................................................................................4

40 C.F.R. § 270.51(a).........................................................................4, 14

40 C.F.R. § 270.51(d) ...............................................................................4

40 C.F.R. § 1502.24(b) ...........................................................................17

40 C.F.R. § 1503.3(d) .............................................................................17

40 C.F.R. § 1503.3(e) .............................................................................17

## FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 40(b)(2) ...........................................................................1

## GUAM ADMINISTRATIVE RULES AND REGULATIONS

22 Guam Admin. R. & Regs. § 30109(a) ..................................................4

22 Guam Admin. R. & Regs. § 30109(o) ..................................................4

**Page(s)**

**OTHER AUTHORITIES**

EPA OB/OD Memo (June 7, 2022) *available at*:
https://www.epa.gov/system/files/documents/2022-06/OBOD_
Policy_Memo_signed_6.7.22_508.pdf..............................................................10

# TABLE OF ACRONYMS

Andersen              Andersen Air Force Base

EIS                   Environmental Impact Statement

Guam EPA              Guam Environmental Protection Agency

NEPA                  National Environmental Policy Act

OB/OD                 Open Burning and Open Detonation

RCRA                  Resource Conservation and Recovery Act

EPA                   United States Environmental Protection Agency

## INTRODUCTION

The Department of the Air Force decided to destroy hazardous waste munitions through open-burning and open-detonation activities on a beach in northern Guam. The Air Force accordingly submitted an application to a Guam permitting authority detailing where and how it will carry out those operations. A panel of this Court determined that the Air Force's decision to conduct those operations for a new three-year period, memorialized in the permit application, constitutes final agency action. That fact-bound determination was correct, creates no split of authority, and does not warrant further review. *See* Fed. R. App. P. 40(b)(2).

Defendants primarily take issue with the panel's conclusion that the Air Force's decision carried legal consequences before the Guam permitting authority approves the new application. But the decision—and the application embodying it—bound the Air Force to a particular course of action with respect to its own operations. Defendants identify no decision of the Supreme Court, this Court, or another court of appeals employing contrary reasoning on similar facts. And because the final-agency-action inquiry is notoriously context-specific and lacks "one-size-fits-all heuristic[s]," *California Communities Against Toxics v. EPA*, 934 F.3d 627, 632 (D.C. Cir. 2019), cases analyzing dissimilar agency initiatives—such as recommendations or non-binding guidance documents—say little about the

scenario facing the panel here. In any event, the panel also properly determined that the Air Force's filing of its permit-renewal application had the concrete legal effect of extending the three-year term of its prior permit. The finding of final agency action can be fully supported on that even narrower ground, rendering this case an even worse vehicle to explore the nuanced issues that Defendants would have the en banc court decide.

Defendants also seek further review of the panel's holding that the Air Force was required to conduct an analysis under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq*., before deciding to engage in open-burning and open-detonation operations for another term. In this respect too, the panel's conclusion is fully consistent with this Court's precedents and that of its sister circuits, as the opinion already explained. Op. 41-42 & n.10, 45-46. In arguing otherwise, Defendants conflate the distinct roles of the Air Force and the Guam permitting authority—which are different decisionmakers that must consider environmental factors under different federal laws at different junctures.

At bottom, Defendants simply disagree with the case-specific conclusions the panel reached. But those conclusions are demonstrably correct and do not warrant further review. Rehearing should be denied, and this case should return to the district court to proceed past the motion-to-dismiss stage.

## BACKGROUND

1.      Congress enacted NEPA "to protect the environment by requiring that federal agencies carefully weigh environmental considerations and consider potential alternatives to the proposed action before the government launches any major federal action." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005). NEPA requires all federal agencies to prepare a "detailed statement" for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C) (1975). This environmental impact statement (EIS) must identify, among other things, "the environmental impact of the proposed action" and "alternatives to the proposed action." *Id.*; *see* Op. 8-9 & n.3. "With respect to timing, agencies must take a 'hard look' at environmental impacts '*before* taking … action.' " Op. 10 (citation omitted) (alteration in original).

2.      The Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 *et seq.*, governs the management of hazardous waste. To dispose of such waste, a facility generally must obtain a RCRA permit from the U.S. Environmental Protection Agency (EPA) or a state or territorial program administrator. 42 U.S.C. § 6925. EPA has authorized the Guam Environmental Protection Agency (Guam EPA) to administer Guam's RCRA-permitting program.

3

Op. 13.[2] A permit applicant must submit a description of the processes to be used for treating the hazardous waste; a description of the procedures, structures, or equipment used to prevent runoff, water contamination, atmospheric releases, and other hazards; and (as relevant to the Air Force here) "[d]etailed hydrologic, geologic, and meteorologic assessments" that "address and ensure [the facility's] compliance" with environmental performance standards. 40 C.F.R. §§ 270.13(i), 270.14(b)(8), 270.23(b); *see* Op. 12.

Under Guam's program, a RCRA permit has a fixed three-year term. Op. 13. Importantly, if the permittee timely applies for renewal, the expired permit continues in force until the effective date of a new permit. *See* 40 C.F.R. § 270.51(a); 22 Guam Admin. R. & Regs. § 30109(a), (o) (adopting § 270.51); *see also* 40 C.F.R. § 270.51(d).

3.    The following facts are drawn from the complaint and are taken as true at this stage. *See* Op. 7 n.2. Since 1982, the Air Force has obtained RCRA permits to treat hazardous-waste munitions through open burning and open detonation (OB/OD) at a disposal range on Andersen Air Force Base (Andersen) located on Tarague Beach in northern Guam. Op. 14-15. The Air Force has

_____

[2] Defendants suggest (Pet. 3) that this case concerns "dangerous unexploded ordnance across Guam" left by "World War II." But emergencies involving military munitions do not require a RCRA permit. *See* 40 CFR §§ 266.204, 270.1(c)(3)(i)(D).

conducted open-detonation operations under each permit but has not engaged in open-burning operations since the early 2000s. Op. 14. The Air Force's most recent RCRA permit, issued in 2018, was set to expire on September 3, 2021. Op. 15.

The Air Force decided to continue its open-detonation operations on Tarague Beach and to potentially restart open-burning operations. Op. 15, 24. Accordingly, on May 17, 2021, the Air Force submitted a RCRA permit-renewal application. Op. 15; *see* ER-93 (¶ 2). The 2021 application details the locations where the Air Force decided that OB/OD would take place, the OB/OD units' design, and the procedures for OB/OD operations. ER-105–07 (¶¶ 40-44); *see, e.g.,* ER-54; ER-61; ER-65–72; *see* Op. 31. The Air Force also specified the types of waste it plans to open burn and open detonate, including "common military ordnance material (such as black powder, white/red phosphorus, tear gas, ammunitions, propellants, and explosive materials)," bombs, mortars, antipersonnel and antitank mines, and grenades. ER-107 (¶ 43); *see* ER-83; ER-86–89. Those specifications and representations are binding on the Air Force if the permit issues. Op. 31.

OB/OD is inherently uncontrolled, and toxic by-products are released directly into the environment. ER-93–94 (¶ 3). OB/OD operations on Tarague Beach could eject unexploded ordnance and fragments into the ocean and reef,

threatening local families that recreate on the beach and fish offshore for food. ER-109 (¶ 49). OB/OD also releases contaminants directly into the air, and fuel used during open burning can spill directly onto the beach. ER-108–09 (¶¶ 47-48). In addition, hazardous-waste constituents from OB/OD operations could reach Guam's sole-source aquifer—which lies underneath Andersen's disposal range—and contaminate the drinking water supply for more than eighty percent of the island's population. ER-109 (¶ 49). The Air Force nonetheless made its 2021 decision to treat hazardous-waste munitions using OB/OD on Tarague Beach without conducting a NEPA analysis. Op. 15.

4.      Prutehi Litekyan challenged the Air Force's failure to comply with NEPA before submitting the 2021 permit-renewal application. Op. 16. The district court granted Defendants' motion to dismiss. Op. 17. As relevant here, the court concluded that there was no final agency action and that Prutehi Litekyan failed to state a claim because the Air Force's application was not subject to NEPA. Op. 17-18.

5.      A panel of this Court reversed on both grounds. Op. 18-47. Applying the two-prong test in *Bennett v. Spear*, 520 U.S. 154 (1997), the panel concluded that the Air Force's submission of its 2021 permit-renewal application constituted final agency action. Op. 23-34. The panel noted that, before the 2018 permit expired, the Air Force "decided to continue OD operations and restart OB

operations at Tarague Beach for a forward-looking three-year period." Op. 24. And the panel explained that the Air Force's "'definitive position'" was reflected in the renewal application, which "described how the agency would carry out OB/OD activities between 2021 and 2024." *Id.* (citation omitted); *see* Op. 30. The panel further held that the 2021 application carried the "'legal consequence'" of "committing the Air Force to a particular course of action." Op. 32 (citation omitted). As an alternative basis for finding finality, the panel observed that the Air Force's submission of the renewal application had the "legal consequence of prolonging the life of its 2018 permit." Op. 33 n.9.

The panel additionally held that RCRA does not supplant NEPA's application to the Air Force's decision to treat hazardous waste on Tarague Beach. The panel explained that this Court has located "exemptions" to NEPA only where agency compliance with another law "would create an irreconcilable and fundamental conflict" or when the other law's requirements "displace[]" NEPA's. Op. 35 (citation omitted). The panel found neither exemption implicated here. It explained that there is no conflict between applying NEPA to the Air Force's antecedent decision to seek a permit and applying RCRA to Guam EPA's separate decision on the application. Op. 35-36. And the panel reasoned that nothing in RCRA displaces the Air Force's independent duty to consider environmental

factors when determining whether and where to conduct OB/OD operations. Op. 38-41, 43-45.

Judge VanDyke filed an opinion dissenting from the majority's final-agency-action finding. Op. 47-74. He expressed no view on the ruling that RCRA does not supplant NEPA with respect to the Air Force's permit-renewal decision. Op. 48 n.1.

## ARGUMENT

I. NO FURTHER REVIEW IS WARRANTED OF THE PANEL'S FINDING OF FINAL AGENCY ACTION

This case simply concerns the application of the well-established test for final agency action under *Bennett v. Spear* to this case's distinctive facts. *See* Op. 23. Under that test, "[f]irst, the action must mark the 'consummation' of the agency's decisionmaking process." 520 U.S. at 177-78 (citation omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citation omitted).

### A. The Panel Correctly Found The First *Bennett* Prong Met

1. Defendants do not contest the panel's determination that the Air Force's permit-renewal application qualifies as "agency action," *i.e.*, a statement of "particular applicability" and "future effect designed to implement … policy." Op. 22-23 (quoting 5 U.S.C. § 551(4)). From that premise, the panel reached the straightforward conclusion, based on the alleged facts, that the application

8

"represents the *Air Force's* 'last word' on its intent to carry out OB/OD operations on Tarague Beach" for another three-year term. Op. 27. As the panel explained, the Air Force "had reached the 'consummation' of its decisionmaking process" with respect to the decision to renew its OB/OD authority, which is "reflected by the content of the 2021 permit application." Op. 23-24.

That conclusion does not conflict with any decision of this Court or of the Supreme Court. Indeed, in the district court, Defendants did not even contest the first *Bennett* prong. They now rely (Pet. 13) on cases involving an agency's report about the results of a pilot project, *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 952 (9th Cir. 2017), and an agency's non-binding, non-essential recommendation to another agency about whether to grant a permit, *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1093-95 (9th Cir. 2014). As an initial matter, both cases turn on the second *Bennett* prong (regarding legal consequences), not the question whether the agency had consummated its decisionmaking. *See Teamsters*, 861 F.3d at 952; *Columbia Riverkeeper*, 761 F.3d at 1094. In any event, neither case involves an agency reaching a conclusive determination, with respect to its own operations, that it will pursue a particular course of action upon obtaining external approval.

Defendants' reliance on *Biden v. Texas*, 597 U.S. 785, 809-10 (2022), and *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 802 n.9 (9th Cir. 2013) (Pet. 14-

16) is likewise misplaced. Prutehi Litekyan's arguments do not divorce "an abstract decision" (Pet. 14) from a document that memorializes and effects that decision. *See* Op. 25, 27. The relevant document for purposes of this NEPA challenge is *the Air Force's application*—which "described how the [Air Force] would carry out OB/OD activities between 2021 and 2024." Op. 24. This lawsuit does not, as Defendants suggest (Pet. 13-14), challenge a Guam EPA permit (which has yet to issue).

2.     Defendants also insist that the Air Force did not in fact make a decision in 2021 to renew its permit. Pet. 11, 16. That assertion cannot be squared with RCRA, which "impose[s] periodic decisional junctures on permittees" at permit renewal. Op. 29 n.7; *see* 42 U.S.C. § 6925(c)(1), (3). Among other things, the RCRA regime requires permittees seeking renewal (including those in Guam) to "*re-evaluate* … whether safe alternative technologies are available to treat their waste explosives." EPA OB/OD Memo at 1 (June 7, 2022) (emphasis added), *available at* https://www.epa.gov/system/files/documents/2022-06/OBOD_ Policy_Memo_signed_6.7.22_508.pdf; *see id.* at 2, 7-8; 40 C.F.R. §§ 264.601, 265.382. Regardless, Defendants' assertion at most amounts to a factual dispute, which—in addition to being an inappropriate use of the Court's en banc resources—cannot be resolved in Defendants' favor at the motion-to-dismiss stage (and before the administrative record has been produced). *See* Op. 25, 29 n.8.

Even putting aside that procedural barrier, Defendants' argument devolves into semantics. They appear to draw a distinction between a decision to follow an ongoing course and "a reappraisal of the overall course of action." Pet. 16. But whether or not the Air Force's 2021 renewal decision was thoroughly considered—indeed, Prutehi Litekyan's challenge is that the Air Force failed to conduct the mandated analysis, including by considering technological alternatives that did not exist in 1982, *see* Appellant Br. 14-15—the affirmative decision was made to renew the term-limited permit rather than cease OB/OD operations at the term's end. *See* Op. 27. That is sufficient.

B.      The Panel Correctly Found The Second *Bennett* Prong Met

1.      Defendants primarily take issue with the panel's determination that the Air Force's 2021 decision to conduct OB/OD operations for another three years (and the application reflecting that determination) had "legal consequences" under *Bennett*'s second prong. Pet. 6-13. They criticize the panel for supposedly conflating "the legal obligations that will flow from Guam EPA's ultimate decision on the permit" with the consequences of "the application." Pet. 6-7.

That plainly misconstrues the panel's analysis. As the panel explained, in the application, the Air Force made detailed representations about where and how it will conduct OB/OD operations. Op. 30-31. Those "representations made and the disposal plans set forth" will be binding on the Air Force during the permit's term,

11

and "the Air Force will not be able to deviate unilaterally from" them. Op. 31. The application thus "has the 'direct and appreciable legal consequence[]'" of "committing the Air Force to a particular course of action—waste removal operations under the protocol proposed in the application." Op. 32.

To be sure, the Air Force's commitments in the 2021 application will only come into effect if Guam EPA approves the new permit. *See* Op. 30-31. But this Court has been clear that "[a]n agency action can be final even if its legal or practical effects are contingent on a future event." *Gill v. U.S. Dep't of Just.*, 913 F.3d 1179, 1185 (9th Cir. 2019); *see* Op. 27. That follows from Supreme Court precedent deeming agency determinations final even if a future enforcement action would be required. *See United States Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 599-600 (2016); *Sackett v. EPA*, 566 U.S. 120, 126 (2012). In arguing otherwise, Defendants invoke cases where agency officials delivered reports to the President that functioned "like a tentative recommendation." *Franklin v. Massachusetts*, 505 U.S. 788, 797-98 (1992); *see Dalton v. Specter*, 511 U.S. 462, 469-70 (1994) (similar). But this case does not involve a subordinate providing a recommendation to an intra-branch superior; here, the Air Force issued its final determination about its own course of action.

Defendants' claim of a conflict with decisions of this Court or other circuits (Pet. 8-10) also misses the mark. Defendants largely rely on decisions involving

12

non-binding agency guidance or recommendations that are not illuminating with respect to the kind of agency action here. For example, in *CBD v. Haaland*, 58 F.4th 412 (9th Cir. 2023), this Court observed that an Endangered Species Act recovery plan was not final because the issuing agency would not be obligated to follow the plan in the future. *Id.* at 417-18. In *Southern California Alliance of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831 (9th Cir. 2021), this Court deemed an EPA guidance document non-final because the document recommended a statistical method for Clean Water Act enforcement that future permits—issued to private parties, not to EPA itself—would need to choose to adopt. *Id.* at 837-38. And in *California Communities Against Toxics v. EPA*, the D.C. Circuit held that an EPA interpretive memo was not final because it merely "advise[d] EPA employees of the agency's position" and did not "bind [relevant] state permitting authorities or assure regulated entities" of any rights in the permitting process. 934 F.3d at 639; *see also Chemours Co. v. EPA*, 109 F.4th 179, 185-86 (3d Cir. 2024) (non-binding "health advisory" non-final); p. 9, *supra* (addressing the agency report and agency recommendation in *Teamsters* and *Columbia Riverkeeper*).

None of those decisions concerns an agency's self-binding determination about how it will conduct its own operations. Indeed, one of Defendants' authorities specifically cautions against the kind of facile comparisons and "one-size-fits-all heuristic[s]" that Defendants urge here. *California Communities*, 934

13

F.3d at 632. As the D.C. Circuit explained, courts deciding final-agency-action questions "should resist the temptation to define the action by comparing it to superficially similar actions in the caselaw," and instead focus on "the unique constellation of statutes and regulations that govern the action at issue." *Id.* at 631. Defendants thus overshoot in suggesting (Pet. 9) that the decision in this RCRA-permitting case will lead to agency "proposals," "draft[s]," and "analyses" being deemed final writ large. The panel's analysis was tethered to the binding nature of the plans included in the Air Force's application to take specified action, from which the agency will not be free to deviate.

2.    In addition, the panel correctly determined that, at minimum, the Air Force's submission of its renewal application had the legal consequence of enabling the agency to continue OB/OD operations under the terms of the previous permit, which otherwise would have expired on September 3, 2021. Op. 33 n.9. Defendants make no attempt to show that this narrow, fact-specific holding— which is grounded in the nuances of RCRA's permit-application process, *see* p. 4, *supra*—implicates any conflict of authority. Instead, they assert (Pet. 11) that this consequence flowed from "the 2018 permit" only. That is wrong. As a matter of law, the 2021 renewal application triggered the extension of the prior permit's term. *See* 40 C.F.R. § 270.51(a) ("the conditions of an expired permit continue in

force … until the effective date of a new permit … *if* … [t]he permittee has submitted a timely application [for a new permit]") (emphasis added).

Defendants alternatively contend that this extension of the Air Force's OB/OD authority is a "type of embedded effect necessary to accommodate an administrative process" and not a "legal consequence." Pet. 12. But the Supreme Court decision they cite holds that agency action imposing procedural obligations on a private party—like the agency's filing of a complaint that obligates the other side to respond—does not count. *See FTC v. Standard Oil*, 449 U.S. 232, 242 (1980); *see also Industrial Customers of Nw. Utilities v. BPA*, 408 F.3d 638, 646-47 (9th Cir. 2005) (reiterating *Standard Oil*). That is a far cry from the situation here, where the Air Force's application has enabled the agency to engage in environmentally destructive operations on Tarague Beach for nearly four years and counting. *See* Pet. 13.

In short, engaging with Defendants' narrow objections to this independent basis for the panel's final-agency-action finding would amount to error correction at best. Further review is not warranted.[3]

---

[3] Defendants also argue that the 2021 application "implements a pre-existing plan formed decades ago" and "does not determine any rights." Pet. 11-12 (citation omitted). The first assertion is unavailing for the reasons explained. *See* pp. 10-11, *supra*. The second is unpersuasive: the extension obviously affected the Air Force's "right[]" to engage in OB/OD operations past September 2021.

II.     NO FURTHER REVIEW IS WARRANTED OF THE PANEL'S RULING
        THAT NEPA APPLIES TO THE AIR FORCE'S DECISION

In two pages, Defendants also ask this Court to grant rehearing to re-examine the panel's holding that the Air Force was required to comply with NEPA before deciding to engage in OB/OD operations on Tarague Beach for another three years. Once again, the panel's decision was correct and does not conflict with any decision of this Court or of another court of appeals.

1.     Another federal environmental statute will supplant NEPA's requirements by implication only when (i) the two statutes produce an irreconcilable conflict (which Defendants do not claim exists here), or (ii) where the other statute displaces NEPA's procedural requirements. Op. 35; *see id.* at 37. Here, the panel concluded that RCRA's permitting process—which Guam EPA administers—does not displace NEPA's application to the Air Force's *antecedent* decision to carry out OB/OD operations in this particular location, and thus to seek a permit in the first place. Op. 38-41.

As the panel explained, "the timing of each statute's prescribed environmental review is entirely distinct," because NEPA requires action agencies to prepare an environmental analysis and engage with the public "*before* reaching a final decision to undertake a particular activity that may have significant environmental impact." Op. 38. Guam EPA's evaluation of environmental factors at the permit-approval stage is therefore no substitute for the Air Force's due

consideration of environmental factors—including available alternatives to the
proposed action—before committing itself to seeking a permit for particular
operations in a particular location. *See* Op. 38-39 (NEPA's requirement of pre-
decisional analysis "assures that environmental impacts are not 'overlooked or
underestimated' and then discovered, if at all, 'after resources have been
committed or the die otherwise cast'") (quoting *Robertson v. Methow Valley
Citizens Council*, 490 U.S. 332, 349 (1989)).[4] That commonsense conclusion is
consistent with precedent. *See City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*,
123 F.3d 1142, 1150-52 (9th Cir. 1997) (evaluating the Federal Highway
Administration's NEPA compliance even though the project would also require a
Clean Water Act permit from the Army Corps of Engineers).[5]

  2. Once again, Defendants' criticisms (Pet. 17-18) are not responsive to
this fundamental distinction between the Air Force's and Guam EPA's roles. They

---

 [4] For this reason, Defendants' complaint (Pet. 1) that the decision below
might result in multiple challenges to the planning and authorization of OB/OD
activities is not compelling. Such challenges would be attacking different decisions
by different decisionmakers (here, one federal and one non-federal) according to
the decisionmaker's distinct obligations under federal law.

 [5] The NEPA regulations in effect when the Air Force decided to continue
OB/OD at Andersen contemplated that action agencies would comply with NEPA
even if another agency must grant a permit. *See* 40 C.F.R. § 1502.24(b) (2021)
(draft EIS must "list all Federal permits, licenses, and other authorizations that
must be obtained in implementing the proposal"); *id.* § 1503.3(d)-(e) (2021)
(referencing comments on draft EISs by separate permitting agencies).

rely on *Merrell v. Thomas*, 807 F.2d 776 (9th Cir. 1986), and *Alabama ex rel. Siegelman v. U.S. EPA*, 911 F.2d 499 (11th Cir. 1990). But, in both cases, the courts determined that *EPA's* obligation to conduct a regulatory inquiry under another environmental statute—in *Merrell*, the Federal Insecticide, Fungicide, and Rodenticide Act, and, in *Siegelman*, RCRA—displaced *EPA's* obligation to conduct a NEPA analysis. *See Merrell*, 807 F.2d at 778-80; *Siegelman*, 911 F.2d at 504-05.

*Merrell* and *Siegelman* might bear on the distinct question whether, when EPA is the RCRA permitting authority, EPA must conduct a NEPA analysis before approving an application. But that is not the question here. As even Defendants acknowledge, "[t]he majority opinion did not rule that NEPA applies to RCRA permitting" by EPA (or Guam EPA). Pet. 18. So *Merrell* and *Siegelman* are fully consistent with the panel's holding, as the opinion took care to explain. Op. 41-42, 45-46; *see also id.* at 41 & n.10 (noting that courts "have almost exclusively limited NEPA redundancy exemptions to agencies whose focus is protecting the environment" and citing cases).

The fact that the RCRA application is designed to help a different entity carry out its own environmental inquiry (Pet. 18-19) has no bearing on whether NEPA required the *Air Force* to evaluate the environmental effects of its separate decision about how and where to treat hazardous-waste munitions—an evaluation

18

that might have obviated the application entirely. *See* Appellant Br. 48-50.

Defendants cite no authority to the contrary. Finally, Defendants fall back on their factual assertion that the Air Force did not actually make a decision before submitting its 2021 renewal application— which, again, cannot carry the day. *See* p. 10, *supra*.

## CONCLUSION

For the foregoing reasons, the petition should be denied.

Dated: June 10, 2025

> Respectfully submitted,
>
> /s/ David L. Henkin
> DAVID L. HENKIN
> THIEN T. CHAU
> EARTHJUSTICE
>
> Attorneys for Plaintiff-Appellant
> Prutehi Litekyan: Save Ritidian

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 22-16613

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,197 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ David L. Henkin | **Date** | June 10, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**        *Rev. 12/01/24*